UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STEVEN H.,[1]

      **Plaintiff,**

v.                                                                Civil Action 1:22-cv-580
                                                                     Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL
SECURITY,

      **Defendant.**

## OPINION AND ORDER

Plaintiff, Steven H. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits. This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply (ECF No. 11), and the administrative record (ECF No. 6). For the reasons that follow, Plaintiff's Statement of Errors is **OVERRULED,** and the Commissioner's decision is **AFFIRMED**.

                                                    **I.      BACKGROUND**

Plaintiff protectively filed his application for Title II disability insurance benefits on March 31, 2020, alleging, after amendment, that he became disabled on October 3, 2019. After Plaintiff's applications were denied at the initial and reconsideration levels, an administrative

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

law judge ("ALJ") held a hearing on January 11, 2022, and issued an unfavorable determination on March 15, 2022. That unfavorable determination became final on August 22, 2022, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. Plaintiff asserts two contentions of error: (1) the ALJ erred in failing to find that Plaintiff met the Compassionate Allowance criteria for Early Onset Alzheimer's; and (2) the ALJ erred in finding, as part of the residual functional capacity analysis, that Plaintiff could work on a regular and continuing basis. (Pl.'s Statement of Errors 4–9, ECF No. 9.) The undersigned disagrees as to both contentions of error.

## II. THE ALJ'S DECISION

On March 15, 2022, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 36–52.) At step one of the sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since October 3, 2019, Plaintiff's alleged disability onset date. (*Id.* at 39.) At step two, the ALJ

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

found that Plaintiff had the severe impairments of neurocognitive disorder (mild dementia) of early onset Alzheimer's disease, and mild cognitive impairment. (*Id.* at 39–40.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 40–42.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC")[3] as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He can perform simple, routine task[s]. He can maintain attention, concentration[,] persistence and pace for simple routine tasks in an environment without high production rates or quotas and no fast pace. He is capable of low stress jobs, defined as those with occasional changes in the work setting with changes explained in advance and with occasional decision-making.

(*Id.* at 43.) The ALJ then relied on the hearing testimony of a Vocational Expert ("VE") at steps four and five to conclude that Plaintiff was unable to perform any past relevant work, but that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. (*Id.* at 50–52.) Specifically, the ALJ relied on the VE's testimony that an individual with Plaintiff's age, education, work experience, and residual functional capacity could perform the requirements of representative occupations such as Janitor, Hospital Cleaner, and Dishwasher. (*Id.* at 51.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.* at 52.)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

---

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV.     ANALYSIS

Plaintiff raises two issues in his Statement of Errors: (1) the ALJ erred in failing to find that Plaintiff met the Compassionate Allowance criteria for Early Onset Alzheimer's; and (2) the ALJ erred in finding, as part of the RFC analysis, that Plaintiff could work on a regular and continuing basis. (Pl.'s Statement of Errors 4–9, ECF No. 9.) The undersigned considers each contention of error in turn.

**A.    The ALJ did not err in declining to find Plaintiff disabled under the Compassionate Allowance framework.**

Plaintiff contends that the ALJ erred in not finding that his Early-Onset Alzheimer's Disease met the Compassionate Allowance criteria for disability. (Pl.'s Statement of Errors 4–8, ECF No. 9.) The undersigned disagrees.

The Social Security Administration's Compassionate Allowance ("CAL") initiative is "a process that identifies for expedited handling claims that involve impairments that invariably qualify under the Listing of Impairments in appendix 1 to subpart P based on minimal, but sufficient, objective medical evidence." 20 C.F.R. § 404.1602. Early-Onset Alzheimer's Disease ("EOA") is one of the medical conditions that may qualify for expedited CAL handling. *See* Program Operations Manual System ("POMS") DI 23022.385, https://secure.ssa.gov/apps10/poms.nsf/lnx/0423022385 [https://perma.cc/X8NU-FXDL]. This categorization permits a simplified assessment to be undertaken based on certain Medical Evidence of Record, which for EOA comprises clinical records, a report of daily living completed by a relative or caregiver, and certain standardized testing. *Id*. The POMS also alternatively suggests that ALJs evaluate EAO under Listings 11.17 and 12.02. *Id.* Importantly, ALJs are not required to evaluate claims involving a covered medical condition under the CAL framework: "Adjudicators may, at their discretion, use the Medical Evidence of Record or the listings suggested to evaluate the claim. However, the decision to allow or deny the claim rests with the adjudicator." *Id.*

As a result, courts across the country have consistently held that "[t]he fact that a condition qualifies for a compassionate allowance does not require a finding of disability." *Robinson v. Colvin*, No. 15-60502-CIV, 2016 WL 4801346, at *3 (S.D. Fla. Jan. 5, 2016); *see also Yaws on behalf of B.D.H. v. Berryhill*, No. 4:15-CV-0961-Y-BL, 2017 WL 1026231, at *6

(N.D. Tex. Feb. 23, 2017) (same); *Hall v. Colvin*, No. 1:12-CV-00347-REB, 2013 WL 4776463, at *4 (D. Idaho Sept. 4, 2013) (same); *Doto v. Berryhill*, No. 17-CV-01120-VKD, 2018 WL 4680212, at *15 (N.D. Cal. Sept. 28, 2018) (same). Rather, ALJs retain the discretion to evaluate CAL-qualifying conditions under the standard step-three listing analysis. *See*, *e.g.*, *Sarah M. v. Kijakazi*, No. 21 CV 2454, 2022 WL 3139566, at *5 (N.D. Ill. Aug. 5, 2022) ("Even under the compassionate allowance method, the ALJ retained discretion to evaluate plaintiff's claim using the standard step-three analysis."); *Robinson*, 2016 WL 4801346, at *3 (same); *Hall*, 2013 WL 4776463, at *4 (same).

The ALJ in this case elected to evaluate Plaintiff's EOA under the standard step-three listing analysis. (R. 40–42.) He expressly considered Listing 12.02 (neurocognitive disorders), which requires that a claimant satisfy the "Paragraph B" criteria, which appear in paragraph B of many Listings of Impairments involving mental impairments. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A(2)(b). To satisfy the Paragraph B criteria, a claimant's mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning:

    (1) understand, remember, or apply information;

    (2) interact with others;

    (3) concentrate, persist, or maintain pace; and

    (4) adapt or manage oneself.

*Id.* The ALJ determined that Plaintiff had no more than mild or moderate limitations in each of the four areas of mental functioning, and therefore Plaintiff did not meet the criteria of Listing 12.02. (R. 41.) Although the ALJ did not expressly consider Listing 11.17 (Neurodegenerative disorders of the central nervous system), the other POMS-suggested listing for EOA, Listing

11.17 also requires a finding that Plaintiff have a "marked" limitation in at least one of the four areas of mental functioning that the ALJ considered under Listing 12.02. Thus, because Plaintiff has no more than moderate limitations in any of the four areas, the ALJ would also have concluded that Plaintiff does not meet the criteria of Listing 11.17.

Plaintiff does not object to any of the ALJ's findings with respect to the Listings at step three of the sequential evaluation process. Plaintiff merely relies on his EOA diagnosis and cognitive symptoms and argues that these are sufficient for the ALJ to have found him disabled under the CAL framework. (Statement of Errors 8, ECF No. 9) ("In this claim the ALJ found that Plaintiff's Early-Onset Alzheimer's Disease is a severe impairment. It should follow that Plaintiff should be found disabled based upon the criteria in POMS 23022.385."). Accordingly, because the ALJ retained the discretion to evaluate Plaintiff's EOA using the standard step-three Listing analysis instead of the CAL framework, and because Plaintiff does not raise any error with the ALJ's Listing analysis, this contention of error lacks merit. *See Bowers v. Saul*, No. CV 19-17386, 2020 WL 4435405, at *4 (D.N.J. Aug. 3, 2020) (finding no reversible error in an ALJ's failure to evaluate EOA under the CAL framework, because "an Early-Onset Alzheimer's Disease diagnosis does not guarantee a disability benefits claim under the CAL" and "[e]ven if the ALJ had treated Plaintiff's claim as a CAL case, the ALJ, nevertheless, retained the discretion to consider Plaintiff's complete medical record in her decision to either grant or deny disability benefits").[4]

---

[4] Plaintiff also objects that the ALJ failed to include a letter from his wife among the considered exhibits, even though POMS dictates that ALJs consider any "activities of daily living report or a similar report completed by relative or caregiver" when evaluating EOA under the CAL framework. However, as noted above, the ALJ was not required to use the CAL framework to evaluate Plaintiff's EOA. Further, Plaintiff's wife testified at the January 11, 2022 hearing, and Plaintiff has not argued that his wife's letter contained any testimony that was not elicited at the

**B. The ALJ's RFC is supported by substantial evidence.**

Plaintiff further contends that the ALJ erred in finding that Plaintiff could work on a "regular and continuing basis" under 20 C.F.R. § 404.1545 as part of the ALJ's RFC analysis. Again, the undersigned disagrees.

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. § 404.1545(a)(1), (b)–(c). The determination of a claimant's RFC is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e), 416.927(e). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. §§ 423(d)(5)(B), 1382c(a)(3)(H)(i) (incorporating § 423(d) for Title XVI). Consistently, Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work. SSR 96-8P, 1996 WL 374184 (July 2, 1996). An ALJ must explain how the evidence supports the limitations that he or she sets forth in the claimant's RFC:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must

---

hearing. Any error by the ALJ in failing to consider Plaintiff's wife's letter was therefore harmless.

8

>also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (internal footnote omitted).

Here, the ALJ concluded that Plaintiff could perform work at all exertional levels, but included several non-exertional limitations in Plaintiff's RFC. (*See* R. 43) (finding that Plaintiff "can maintain attention, concentration[,] persistence and pace for simple, routine tasks in an environment without high production rates or quotas and no fast pace," in "low stress jobs" involving only "occasional changes in the work setting with changes explained in advance and with occasional decision-making"). The ALJ's conclusion that Plaintiff could perform work on a regular and continuing basis under these specified conditions is supported by the opinions of the state agency reviewers at the initial and reconsideration level, whose opined limitations the ALJ found persuasive and adopted verbatim. (*See* ALJ Decision, R. 49; Mental Residual Functional Capacities at Initial and Reconsideration Levels, R. 134, 142–43.) The opinions of state agency reviewers constitute substantial evidence on which the ALJ may rely to craft the RFC. *See Hefflin o.b.o. LDS v. Kijakazi*, No. 1:20-cv-1414, 2021 WL 4477785, at *6 (N.D. Ohio Sept. 30, 2021) (collecting cases for the proposition that "State Agency opinions may constitute substantial evidence supporting an ALJ's decision"); *see also* 20 C.F.R. § 404.1513a(b) (ALJs are required to consider findings by state agency medical consultants). The ALJ further relied on treatment notes from Plaintiff's treating neurologist indicating "relatively benign symptomatology and difficulties." (*See* R. 44–45) (citing in detail treatment notes of Dr. Rhonna Shatz at R. 443–64, 744–817, 902–15).

The ALJ's conclusion that Plaintiff could perform certain work on a regular and continuing basis was therefore supported by substantial evidence. And "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial

9

evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

Plaintiff's arguments to the contrary are unavailing. Plaintiff's reliance on his termination from his previous employment due to his EOA symptoms is misplaced, because the ALJ acknowledges that Plaintiff is not able to perform his past relevant work. (R. 50.) Instead, the ALJ concluded that Plaintiff could perform *other* jobs that exist in significant numbers in the national economy on a regular and continuing basis. (*Id.* at 51.) Further, although Plaintiff objects to the ALJ's reliance on Plaintiff's continued ability to drive in concluding that Plaintiff is able to maintain attention and concentration, the RFC limitations on concentration, persistence, and pace were also supported by the state agency reviewer opinions as noted above. The undersigned therefore finds no error in the ALJ's conclusion that Plaintiff can perform certain work on a regular and continuing basis.

## V.     DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, for the foregoing reasons, Plaintiff's Statement of Errors is **OVERRULED** and the Commissioner's decision is **AFFIRMED**.


**IT IS SO ORDERED.**


*/s/ Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE